## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

JARED G. WOLFFIS,

      Plaintiff,

v.                               **Case No. 1:14cv130-MW/GRJ**

THE CITY OF GAINESVILLE, FLORIDA,
a municipal corporation, and
OFFICER CHARLES OWENS, in his
individual capacity,

      Defendants.

_____/

## ORDER GRANTING SUMMARY JUDGMENT

This is an action against Officer Charles Owens for use of constitutionally excessive force and the City of Gainesville under 42 U.S.C. § 1983 for having an unconstitutional policy, inadequate training and supervision of officers, and ratification of the use of excessive force, and for a state law battery claim under § 768.28, Florida Statutes. Cross motions for summary judgment are pending. *See* ECF Nos. 19, 30, 33, 34.

In his motion for summary judgment, Officer Owens argues that he is entitled to qualified immunity under § 1983. The City also seeks summary judgment, arguing that Officer Owens did not commit a constitutional violation

1

and thus there is no liability under § 1983 or § 768.28. In the alternative, the City maintains that it did not have an unconstitutional policy or inadequate training and did not ratify Officer Owens' actions. This Court has carefully considered the matter without hearing. This order grants Defendants' motions for summary judgment and denies Mr. Wolffis' motions.

## I.    Background[1]

Mr. Wolffis' recollection of the events of August 4, 2010 is minimal. ECF No. 24-1, at 35. After consuming over ten alcoholic beverages at a local Gainesville bar, the first thing Mr. Wolffis remembers is seeing police lights in the passenger mirror and his decision to leave the scene. *Id.* at 35:22. Mr. Wolffis does not recall why he left. *Id*. at 40:8. The next thing Mr. Wolffis remembers is hearing the sound of boots, a dog panting, and then a dog biting his left leg. *Id.* at 43. He does not recall hearing any orders or commands. *Id*. at 44:8-:11.

According to the evidence, at approximately 3:56 AM, Mr. Wolffis and Bryan Urban were pulled over by Officer Marquitta Davis and Officer Ariel Lugo of the Gainesville Police Department ("GPD") for suspicion of prowling and loitering after driving in a suspicious manner. ECF No. 27-1; ECF No. 24-5, at 5-7. As Officer Davis approached the vehicle, Mr. Wolffis exited the vehicle and left

---

[1] In ruling on the Defendants' motions for summary judgment, all reasonable inferences of fact are drawn in favor of Mr. Wolffis. This is not a case where the plaintiff contradicts the defendant's version of events. Mr. Wolffis concedes that he barely remembers anything. And he certainly does not remember any material fact that would preclude summary judgment.

the scene.  ECF No. 24-4, at 8.  Officer Davis chased Mr. Wolffis on foot, but eventually lost sight of him and called for backup.  *Id*. at 12-13.  Minutes later Officer Owens arrived at the scene with his police canine, Justice, and was given a physical description of Mr. Wolffis.  ECF No. 24-3, at 12-15.  Simultaneously, Officer Lugo approached the driver of the vehicle, Bryan Urban, who confessed that he and Mr. Wolffis had stolen the scooter located in the bed of the pickup truck.[2]  ECF No. 24-2, at 14:21-:25.  Officer Lugo communicated this information over the radio to Officer Owens.  ECF No. 24-5, at 17.

Officer Owens began tracking Mr. Wolffis through several apartment complexes, over fences, and through the woods with Justice on a 15-foot tracking leash.  ECF No. 24-3, at 14:24-15:24.  Before Officer Owens saw Mr. Wolffis, who was concealed in a thick bush, Justice apprehended Mr. Wolffis by biting him on the leg.  *Id*. at 16-17.  Within seconds after Mr. Wolffis complied with Officer Owens' instructions to show his hands, Owens removed Justice.  ECF No. 24-1, at 89:14-:19.  Justice did not bite Mr. Wolffis again after he complied with the orders. *Id*. at 90.  Mr. Wolffis was handcuffed and arrested by a different officer and taken to the hospital for the injuries he sustained from the canine bite.

---

[2] Theft of a motor scooter is a felony under Florida law.  § 812.014(2)(c)6), Fla. Stat.; § 316.003 (21), Fla. Stat.

## II.    Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if the record is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Material" facts are those that might affect the outcome of the case under the governing substantive law. *Id.*  This Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.    Qualified Immunity

**"**Qualified immunity protects government officials performing discretionary functions for civil damages insofar as their conduct does not violate clearly established or constitutional rights of which a reasonable person would have known." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 925 (11th Cir. 2000).  The standard used to assess whether qualified immunity applies is objective reasonableness. *Id.*  ("[The standard] provides ample protection to all but the plainly incompetent or those who knowingly violate the law.").  Qualified immunity "is an entitlement not to stand trial or face the other burdens of litigation" therefore "the question of its applicability should ordinarily be resolved

at the summary judgment stage." *Estate of Rodgers ex rel. Rodgers v. Smith*, 188

F. App'x 175, 180 (4th Cir. 2006) (quoting *Saucier v. Katz,* 533 U.S. 194, 200

(2001)); *see also Ansley v. Heinrich*, 925 F.2d 1339, 1341 (11th Cir. 1991)

(recognizing that the applicability of qualified immunity is a question of law).

Once a public official establishes discretionary authority, the burden shifts to

the plaintiff to demonstrate that qualified immunity should not apply. *Edwards v.*

*Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012). The Supreme Court has

announced a two-step analysis for evaluating qualified immunity claims. *Id.*

(citing *Saucier*, 533 U.S. at 200). First, the Court must determine whether the

public official's conduct amounted to a constitutional violation. *Edwards*, 666

F.3d at 1294. Second, the Court must determine whether the right violated was

clearly established at the time of the violation. *Id.* This Court has the discretion to

decide "which of the two of the two prongs of the qualified immunity analysis

should be addressed first in light of the circumstances in the particular case at

hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The parties do not dispute that Officer Owens was acting within the scope of

his discretionary authority. Therefore Mr. Wolffis has the burden of demonstrating

Officer Owens is not entitled to qualified immunity. *See Priester*, 208 F.3d at 296.

Mr. Wolffis argues that Officer Owens is not entitled to qualified immunity

because he had fair notice that use of force against a non-hostile and non-violent

suspect who complies with officer commands was unconstitutional. Officer Owens argues that there is no clearly established law holding unconstitutional the use of a canine to track and apprehend a felony suspect who flees into the night. The issue is whether Officer Owens violated Mr. Wolffis' clearly established right at the time of the incident, such that he is not entitled to qualified immunity.

To determine whether a right was clearly established at the time of the alleged violation the relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in this situation he confronted." *Jay v. Hendershott*, 579 F. App'x 948, 950-51 (11th Cir. 2014) (citation omitted). There are two methods to determine whether a reasonable officer would know that his conduct was unconstitutional: (1) looking at the existing case law at the time of the event or (2) looking at the officer's conduct and whether the unlawfulness of the action was readily apparent. *Jay*, 579 F. App'x at 950-51.

Under the first method, the right is clearly established if "a concrete factual context [exists] so as to make it obvious to a reasonable government actor that his actions violate federal law." *Fils v. City of Aventura*, 647 F.3d 1272, 1291 (11th Cir. 2011) (citation omitted). The factual circumstances do not need to be identical, but the unlawfulness of the action must be apparent from pre-existing law. *See Jay*, 579 F. App'x at 951; *see also Gennusa v. Canova,* 748 F.3d 1103, 1113 (11th Cir. 2014) ("We do not always require a case directly on point before

concluding that the law is clearly established, but existing precedent must have placed the statutory or constitutional question beyond debate.") (internal quotation marks omitted).  In the context of excessive force claims, "unless a controlling and materially similar case declares the official's conduct unconstitutional, a defendant is usually entitled to qualified immunity." *Jay*, 579 F. App'x at 951 (citation omitted).

The second method, referred to as "obvious clarity," looks at whether an officer's conduct is so unreasonable that he "had to know he was violating the Constitution even without case law on point." *Id*.  In the excessive force context, the conduct must be "so far beyond the hazy border between excessive and acceptable force" that "every reasonable officer in [the defendant's] position [would] conclude that the force was unlawful." *Id*. (quoting *Priester*, 208 F.3d at 926).

Assuming Officer Owens did violate Mr. Wolffis' Fourth Amendment right,[3] Mr. Wolffis fails to demonstrate that Officer Owens' conduct violated clearly established law under either method.  *See Jay*, 579 F. App'x at 951 (holding the plaintiff must demonstrate a violation of clearly established law in order to defeat qualified immunity).  First, the alleged unlawfulness of Officer Owens' actions is not apparent from pre-existing law in this Circuit.  To the contrary, the

---

[3] As further elaborated below, this Court holds that Officer Owens did not violate Mr. Wolffis' Fourth Amendment right.  *See infra* Part V.

Eleventh Circuit has held that an officer's decision to use a dog to track and initially subdue a fleeing suspect is constitutional when the suspect is wanted for the commission of a serious crime, actively flees from police, and is reasonably believed to be armed. *See Edwards*, 666 F.3d at 1297 ("*Crenshaw* at least precludes any conclusion that clearly established law prohibits the police from using a dog to track and subdue a fleeing suspect." (citing *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009))). Here, Officer Owens used Justice to initially track an individual suspected of a felony, who posed an unknown threat level, fled into the night before an officer had a chance to make contact, and made no attempt to surrender. *See id.* at 1296 (holding that it was constitutional for defendant to use a police canine to track and initially apprehend a suspect who fled the scene following a traffic stop and made no attempt to surrender).

The Eleventh Circuit has declared unconstitutional the use of a canine to apprehend a suspect only where the canine was used on a *compliant* suspect for a prolonged period of time. *See Edwards*, 666 F.3d at 1296 (holding that an attack lasting five to seven minutes after a suspect has complied is unconstitutional); *see also Priester*, 208 F.3d at 927 (holding that a police officer who allowed his dog to bite the plaintiff for at least two minutes was not entitled to qualified immunity where the plaintiff was suspected of stealing merely $20 in snacks from a golf shop, immediately submitted to the police, did not attempt to flee or resist arrest,

and did not pose a threat of bodily harm to the officers or anyone else).  But that is not the case here.  The evidence shows that Officer Owens did not subject Mr. Wolffis to a lengthy attack after he had complied with Officer Owens' orders.

Second, Officer Owens' conduct does not fall into the narrow "obvious clarity" exception because his conduct was not so unreasonable that any reasonable officer would conclude the use of force was unlawful. *See Jay*, 579 F. App'x at 951 (holding that use of canine to subdue an uncooperative but non-violent suspect was reasonable).

Finding no support in the *Edwards* and *Priester* line of cases, Mr. Wolffis cannot demonstrate that Officer Owens violated clearly established law when he used a canine to track a fleeing felony suspect.  He also cannot demonstrate that Officer Owens' conduct was obviously unreasonable.  For these reasons, Officer Owens is entitled to qualified immunity.

## IV.    City of Gainesville's Liability

"The Supreme Court has placed strict limitations on municipal liability under section 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Municipalities "may be held liable only for the execution of a governmental policy or custom," *Kamensky v. Dean*, 148 F. App'x 878, 880 (11th Cir. 2005), and not simply because they employ a tortfeasor. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).

"Municipal liability . . . may be premised upon a single illegal act by a municipal officer only when the challenged act may fairly be said to represent official policy . . . ." *Morro v. City of Birmingham*, 117 F.3d 508, 510 (11th Cir. 1997). A city will also be held liable if there is evidence of an unconstitutional policy or, in "limited circumstances," where inadequate police training or supervision amounts "to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, *Ohio v. Harris*, 489 U.S. 378, 387-88 (1989). But regardless of the theory of municipal liability under which a plaintiff proceeds, he or she must identify the municipal policy or custom that allegedly caused the constitutional injury. *Gold*, 151 F.3d at 1350; *see also City of Canton,* 489 U.S. at 385 (requiring "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation").

Mr. Wolffis argues that the City of Gainesville had an unconstitutional policy, inadequate training, and ratified the unconstitutional conduct at issue. The City of Gainesville counters that there is no evidence to support any of these claims. The issue is whether the City violated Mr. Wolffis' constitutional rights by promulgating an unconstitutional policy, inadequately training its officers, or ratifying Officer Owens' alleged excessive force.

## A. Unconstitutional Policy

A city will be held liable for the actions of a police officer if the plaintiff can identify an official policy that led to his or her constitutional deprivation. *Monell*, 436 U.S. at 694. Mr. Wolffis says the City of Gainesville had an unconstitutional policy that directly caused his injuries. He alleges that the City authorized the use of force without requiring its officers to verify that a crime has been committed, that there was any reasonable basis to believe a felony had been committed, or that the suspect presents a serious threat. He further urges this Court to find that the use of a canine is comparable to deadly force, and suggests that such authorization is unconstitutional. Mr. Wolffis also suggests that the authorization of any force against a suspect who poses no verified threat to officer safety is unconstitutional. The City maintains that it did not have an unconstitutional policy that caused Mr. Wolffis' injuries. The issue is whether the City's policy authorizing the use of force, lethal or otherwise, against a fleeing suspect posing an unknown threat level is unconstitutional, and if so whether the policy led to Mr. Wolffis' alleged injuries.

As a preliminary matter, the Eleventh Circuit has held, "*Tennessee v. Garner* does not authorize the federal courts to perform an assessment of the abstract constitutionality of government policies; rather, the only question for the federal courts is whether a particular seizure was constitutional in light of the unique

factual circumstances in which the police acted." *Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1554 (11th Cir. 1989) (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)). As such, this Court cannot evaluate GPD's policy in the abstract but instead must look at whether the alleged unconstitutional policy has a causal connection to the Mr. Wolffis' injuries.

First, Mr. Wolffis alleges that the City's policy permitted the use of canines to apprehend unarmed suspects. Because canine use is equivalent to deadly force, he argues, the City's policy authorizes deadly force in contravention of *Tennessee v. Garner*. Mr. Wolffis is correct that under *Tennessee v. Garner* a policy authorizing the use of deadly force on an unarmed suspect is unconstitutional. 471 U.S. at 11 ("A police officer may not seize an unarmed, nondangerous suspect by shooting him dead."). But this Court cannot find, and Mr. Wolffis does not cite, any case law holding that the use of a trained police canine constitutes deadly force. *See Edwards*, 666 F.3d at 1295 (holding use of a dog to track a fleeing suspect constitutes non-deadly force); *Pace v. City of Palmetto*, 489 F. Supp. 2d 1325, 1332-33 (M.D. Fla. 2007), *aff'd sub nom. Pace v. Ahler*, 282 F. App'x 769 (11th Cir. 2008) (holding the bite and hold training canine method was not unconstitutional, nor did it constitute deadly force). Therefore, Mr. Wolffis' argument that GPD policy unconstitutionally authorized the use of deadly force to prevent felony suspects from escaping fails.

Second, Mr. Wolffis argues that a policy authorizing the use of any force on a non-resistant suspect is unconstitutional. Even if the City does have such a policy, Mr. Wolffis fails to place the *execution* of this policy in context—precisely what *Kerr* admonishes. Despite Mr. Wolffis' attempt to portray himself as a person who was not fleeing but merely lying in a bush posing no threat, the undisputed facts betray him. Mr. Wolffis' flight into darkness, coupled with being suspected of committing a felony, lends itself to the reasonable inference that he posed a threat—regardless of what the official City policy had to say about the situation. *See Miller v. Clark Cnty.*, 340 F.3d 959, 965-66 (9th Cir. 2003) (recognizing that a suspect who had paused while hiding in the woods at the time of his arrest was still evading arrest by flight and still posed a threat). Because Officer Owens' use of force was in response to the actions of Mr. Wolffis, and not merely a blanket application of the allegedly unconstitutional policy, Mr. Wolffis fails to demonstrate that the GPD policy caused his injuries.

Accordingly, Mr. Wolffis' unconstitutional policy claim against the City of Gainesville fails because he cannot demonstrate that any GPD policy caused a violation of his constitutional rights.

## B. Failure to Train

Under "limited circumstances" an allegation of a city's failure to train or supervise its employees can serve as the basis for § 1983 liability. *See Gold*, 151

F.3d at 1350.  The Eleventh Circuit announced a test for determining whether a

city is liable for failure to train.

> To be successful, a plaintiff must demonstrate that: (1) the government
> inadequately trained or supervised its employees; (2) the failure to train is an
> official policy; and (3) the policy caused the employees to violate the
> plaintiff's rights. A plaintiff may prove that a policy existed by showing that
> the government knew that a need to train or supervise its employees existed
> but made a deliberate choice not to take any action. A need for training
> and/or supervision will be proven when there is sufficient evidence that:
> (1) the government's employees face clear constitutional duties in recurrent
> situations; or (2) a pattern of constitutional violations exists such that the
> [government] knows or should know that corrective measures are needed.

*Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1173 (11th Cir. 2001), *cert.*

*granted*, *vacated*, 536 U.S. 953 (2002) and *reinstated*, 323 F.3d 950 (11th Cir.

2003) (citations omitted); *see also Mercado v. City of Orlando*, 407 F.3d 1152,

1161 (11th Cir. 2005) (holding that to survive summary judgment the plaintiff

must provide some evidence of a pattern of improper training and he must

demonstrate that the municipality was aware of the deficiencies in the program);

*Gold*, 151 F.3d at 1350 ("To establish a 'deliberate or conscious choice' or such

'deliberate indifference,' a plaintiff must present some evidence that the

municipality knew of a need to train and/or supervise in a particular area and the

municipality made a deliberate choice not to take any action.").

Mr. Wolffis advances two principal arguments.  The first is that the City's

official training was constitutionally deficient.  He argues that training officers to

presume that all suspects are armed and dangerous is unconstitutional and the

moving force behind his injury. This is a nonstarter. Even if the City did train its officers to presume that all suspects are armed and dangerous, no reasonable juror could find that the training caused the alleged injuries. Viewing the evidence in the light most favorable to Mr. Wolffis, the City's policy was not the reason Officer Owens *presumed* Mr. Wolffis was dangerous. Instead, Officer Owens reasonably evaluated the situation and justifiably used Justice because of Mr. Wolffis' conduct. Any reasonable officer presented with similar facts—a fleeing felon whose location was unknown—would have believed Mr. Wolffis presented a serious threat to officer safety. Thus, Mr. Wolffis did not present sufficient evidence from which a reasonable juror could find that the City training its officers to presume that all suspects are armed and dangerous caused the alleged constitutional violation.

Mr. Wolffis' second argument is that the City ignored actual or constructive notice that its officers lacked training on the use of canines as evidenced by a pattern of similar constitutional violations warranting corrective measures. Alternatively, Mr. Wolffis alleges that the need for proper canine training was so obvious that the City's conduct amounted to deliberate indifference. The City insists that Mr. Wolffis presented insufficient evidence of prior incidents which would have put GPD or the City on notice of inadequate training.

Mr. Wolffis cites three prior incidents involving the use of a police canine to track and apprehend a fleeing suspect. One incident in June 2010 involved mistaken apprehension of a 10-year old male who fled after an unmarked patrol car pulled up close to him. *See Hampton-Bates v. City of Gainesville*, No. 1:12-cv-174-MP-GRJ (N.D. Fla. Dec. 10, 2013) (order denying summary judgment). The investigation report conducted by the GPD concluded that the officer was legally justified in using the canine but that GPD policy should be amended with respect to juveniles. ECF No. 35-2. A second instance of mistaken canine apprehension occurred in April 2010 when officers were targeting individuals that had violated felony probation. ECF No. 35-3. The individual, who matched the description of the wanted suspect and was located at the suspect's residence, fled and ignored all verbal commands and warnings upon seeing the officers. *Id*. The investigation report conducted by GPD concluded that the use of force was reasonable. In the third instance, which occurred in November 2008, the individual, incorrectly identified by a witness as the armed robbery suspect, fled and ignored verbal commands and was apprehended by Officer Owens and Justice while hiding in a thick bush. *Id*. The investigation report conducted by the GPD concluded that the use of force was justified. *Id*.

The evidence produced by Mr. Wolffis does not sufficiently put the City on notice of inadequate training for two reasons. First, those prior incidents are

distinguishable because they concern mistaken apprehension. In this case Officer Owens and Justice apprehended the correct fleeing suspect. It is also unclear whether the cited incidents actually support Mr. Wolffis' claim, since the investigations in all three incidents cleared the use of force and no court found otherwise.[4]

Second, Mr. Wolffis cites nothing beyond these three incidents. Evidence of three incidents over the course of two years is simply not enough to establish a widespread practice or custom that would have put the City on notice. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1294 (11th Cir. 2004) ("Our precedents are clear that, for constitutional violations to be sufficiently 'widespread' for a governmental supervisor to be held liable, they need occur with frequency."); *MacMillan v. Roddenberry*, No. 5:08-CV-351-OC-10GRJ, 2010 WL 668281, at *3 (M.D. Fla. Feb. 19, 2010), *aff'd*, 432 F. App'x 890 (11th Cir. 2011) (holding that fifteen citizen complaints of excessive force over the course of ten years was not enough to establish a pattern without more). Additionally, no evidence is presented that there was a particular problem with Justice's training. *C.f. Kerr*, 875 F.2d at 1551 (finding that evidence of a high ratio of bites to apprehensions indicates a need for training). Accordingly, Mr. Wolffis fails to

---

[4] In *Hampton-Bates*, District Court Judge Paul held that the facts, construed in the plaintiff's favor, warranted denying summary judgment. That case ultimately was not resolved on the merits. *Hampton-Bates v. City of Gainesville*, No. 1:12-cv-174-MP-GRJ (N.D. Fla. July 7, 2014) (order granting voluntary dismissal with prejudice).

demonstrate that a widespread practice of inadequate training or supervision predating the incident in this case actually or constructively put the City on notice such that it can now be held liable for the alleged constitutional violation.

Moreover, Mr. Wolffis fails to demonstrate that this case falls into the narrow exception that the need for training was so obvious and the inadequacy so likely to result in the violation of constitutional rights that the City can reasonably be said to have been deliberately indifferent. *See City of Canton*, 489 U.S. at 390 n.10 (suggesting an obvious need to train police officers on the constitutional limitations on the use of deadly force, when the city provides the officers with firearms and knows the officers will be required to arrest fleeing felons).

For these reasons, Mr. Wolffis' claims for inadequate training and deliberate indifference fail.

### C. Ratification

A city may be held liable for an employee's actions if a plaintiff can prove a final decision-maker ratified the unlawful conduct. *See Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 998 (11th Cir. 1990). Mr. Wolffis argues that the City ratified Officer Owens' alleged unconstitutional conduct when it determined that his use of force was consistent with GPD policies. The City argues that it did not ratify Officer Owens' conduct because it did not have a chance to review his

actions before they became final. The issue is whether a review of an officer's actions that occurs after the alleged violation is sufficient for ratification liability.

For Mr. Wolffis to state a successful § 1983 claim against the City on the basis of a ratification theory, he must prove that the final decision-maker adopted the course of action at issue in a manner that rendered the decision "chargeable to the municipality because their decision is final." *Bannum,* 901 F.2d at 998. Under *Monell* the plaintiff also must establish that the ratified conduct was a direct cause of his injuries. 436 U.S. at 694.

Here, Mr. Wolffis acknowledges that the alleged ratification—that is, the use of force investigation—occurred *after* the alleged constitutional violation occurred. This review occurring after the constitutional violation finalized does not establish the causation necessary to hold the City liable under a ratification theory. *Cf. Pembaur v. Cincinnati*, 475 U.S. 469 (1986) (finding liability where a prosecutor acted as the county's final decision-maker by directing deputies to forcibly enter petitioner's place of business—before the deputies actually entered the place of business).

Because the City did not approve Officer Owens' actions before they became final, and because the City's approval of Officer Owens' conduct did not cause Mr. Wolffis' injuries, Mr. Wolffis' ratification claim fails.

## V.     Excessive Force

As previously discussed, Mr. Wolffis asserts federal and state law claims for constitutionally excessive force and a state law claim for battery, § 768.28(9)(A), Florida Statutes.  All of these claims are governed by the same standard: whether the force used was reasonable in light of all the circumstances.  *See City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996) ("A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances."); *see also Geidel v. City of Bradenton Beach*, 56 F. Supp. 2d 1359, 1365 (M.D. Fla. 1999) (holding that a municipality can be held liable for an intentional tort committed by an employee if the conduct at issue was within the scope of the employee's duties, and the action was not a product of bad faith, malicious purpose, or a wanton and willful disregard of human rights, safety, or property).  A determination that Mr. Wolffis fails to demonstrate that the force was constitutionally unreasonable would dispose of the constitutional claims as well as the battery claim.[5]

Accordingly, this final section addresses whether the use of a trained police canine to track and apprehend a fleeing felony suspect constitutes excessive force

---

[5] Having determined that Officer Owens is entitled to qualified immunity and that the City cannot be held liable for the alleged constitutional violation under any theory provided by *Monell*, this Court may, in its discretion, refuse to exercise supplemental jurisdiction over the remaining state law claims.  *See* 28 U.S.C. § 1367(c).  But since nearly a year has passed since Mr. Wolffis filed this case, judicial economy supports retaining jurisdiction and adjudicating the case in its entirety.

under the Fourteenth Amendment.[6]  Finding that it does not, this section grants summary judgment in favor of the Defendants on the battery claim.  And, as an alternative basis, additionally grants summary judgment on the constitutional claims.

The excessive force analysis under the Fourteenth Amendment is an objective inquiry requiring careful evaluation of the facts and circumstances of each case.  *See Graham*, 490 U.S. at 396; *see also Kingsley v. Hendrickson*, No. 14-6368, 2015 WL 2473447 (U.S. June 22, 2015).  Three factors govern this evaluation: "[T]he severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*  Additionally, the Eleventh Circuit has announced that when considering the *Graham* factors the Court "should consider the need for the application of force, the relationship between the need and amount of force used, and the extent of the injury inflicted." *Vinyard v. Wilson,* 311 F.3d 1340, 1347 (11th Cir.2002).  The reasonableness of the use of force is evaluated from the perspective of a reasonable officer on the scene, and "must embody allowance for the fact that police officers are often

---

[6] In *Reese v. Coxwell*, No. 3:04CV17 RV EMT, 2006 WL 680811, at *5 (N.D. Fla. Mar. 13, 2006), this Court held that the Fourth Amendment encompasses the right to be free from the use of excessive force during an arrest.  This is applied to the states and its subdivisions through the Fourteenth Amendment.

forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396-97.

If it is determined that there is no constitutional violation by the public official, any claims against the city will fail.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[None] of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm.  If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.").

To begin, the constitutionality and reasonableness of the use of a police canine to track fleeing suspects is well-established.  *See Pace*, 489 F. Supp. at 1332-33 ("The bite and hold training method is not unconstitutional. Nor is it . . . unreasonable."); *see also Kerr*, 875 F.2d at 1550 (recognizing the constitutionality of using police dogs trained in the bite and hold method when an officer is placed in a threatening situation).  Moreover, under the *Graham* factors, Officer Owens' use of force was reasonable.

First, Mr. Wolffis was suspected of felony theft—a crime falling on the more severe end of the spectrum.  *Dawe v. Rogers*, No. 809-CV-620-T-30AEP, 2010 WL 271435, at *5 (M.D. Fla. Jan. 15, 2010) (holding that the officer's use of

canine to track suspect was not a constitutional violation given that the officer had probable cause to arrest as suspect for committing a felony burglary, the suspect jumped the fence into the woods, and the wooded area was dark "making it a potentially very dangerous situation"). Mr. Wolffis suggests that Officer Owens had not confirmed that the scooter was stolen, but a reasonable officer can rely on the confession of a co-suspect, in this case Bryan Urban, for probable cause. *See Craig v. Singletary*, 127 F.3d 1030, 1042, 1044–45 (11th Cir. 1997) (en banc) (recognizing that probable cause may be established by a co-defendants' unsworn confession that he and the suspect committed the crime).

Second, because Mr. Wolffis was covered in thick brush at night and was concealed from the officer, a reasonable officer would perceive an immediate threat to officer safety under these circumstances. *Crenshaw*, 556 F.3d at 1291-92 (holding it was objectively reasonable for officer to use a canine to locate and apprehend suspect who fled into the woods at night); *see also Miller*, 340 F.3d at 965 (recognizing that the fleeing suspect hiding in the woods at night possessed a strategic advantage over officers thus heightening the threat to the officers); *Pace*, 489 F. Supp. 2d at 1332 ("By fleeing into the dark swamp, [suspect] put the safety of the officers at risk. Under these circumstances, the use of a K–9 to track [suspect] was objectively reasonable.").

Finally, despite Mr. Wolffis' contention that he was not actively fleeing arrest and instead just "sleeping off" his intoxication in a bush, a reasonable officer could have perceived his actions as actively evading arrest. *See Miller* 340 F.3d at 965-66 (recognizing that a suspect who had paused while hiding in the woods at the time of his arrest was still evading arrest by flight).

The circumstances considered in addition to the *Graham* factors also tilt in Officer Owens' favor. There was a need for force because Officer Owens' could not see if Mr. Wolffis was armed and Mr. Wolffis made no attempt to surrender. *See Edwards*, 666 F.3d at 1295 ("[B]ecause the evidence shows that [the suspect] had not yet tried to surrender when Officer Shanley allowed his dog to first bite [suspect's] leg, this is the sort of 'split-second' determination made by an officer on the scene that *Graham* counsels against second guessing.").

Likewise, the relationship between the need and amount of force used was reasonable, particularly because the force used was limited in duration. *See Edwards*, 666 F.3d at 1295 (recognizing it was reasonable for an officer to use a dog to track and initially subdue the fleeing suspect). As discussed, unlike the defendants in *Edwards* or *Priester*, Officer Owens did not allow Justice to continue to bite Mr. Wolffis after he was subdued. *C.f. Edwards*, 666 F.3d at 1296 (holding that police allowing to canine to attack for five to seven minutes after suspect was subdued was unreasonable); *Priester*, 208 F.3.d at 927 (holding police allowing

canine to attack for two minutes after suspect no longer posed a threat was unreasonable).  And while Mr. Wolffis' injury was certainly severe, his contention that the use of a canine constitutes deadly force fails. *See Edwards*, 666 F.3d at 1295 (defining use of a canine as extraordinary but non-deadly force); *see also Robinette v. Barnes*, 854 F.2d 909, 912 (6th Cir. 1988) (holding that use of a canine is non-deadly force because "the use of a properly trained police dog to apprehend a felony suspect does not carry with it a substantial risk of causing death or serious bodily harm") (citation omitted).

Finally, Mr. Wolffis' suggestion the lack of warning issued by Officer Owens' renders the use of force excessive is simply incorrect.  *See Trammell v. Thomason*, 335 F. App'x 835, 842 (11th Cir. 2009) ("*Kerr's* holding does not establish that a canine warning is required before the release of a police dog."); *Berry v. Gorsage*, No. 3:10-CV-228-J-37JRK, 2012 WL 364093, at *10 (M.D. Fla. Feb. 2, 2012) ("The lack of warning of deployment of a canine alone does not constitute a constitutional violation.").

Because Officer Owens' conduct was reasonable under the circumstances there was no constitutional violation of Mr. Wolffis' rights. Neither Officer Owens nor Defendant City of Gainesville can be held constitutionally or tortiously liable. Therefore summary judgment on all claims must be granted in their favor.

For these reasons,

**IT IS ORDERED:**

1.  Defendant Owens' motion for summary judgment, ECF No. 19, is
    **GRANTED.**

2.  Defendant City of Gainesville's motion for summary judgment, ECF No.
    30 is **GRANTED.**

3.  Plaintiff's motion for summary judgment against Defendant Owens, ECF
    No. 33, is **DENIED.**

4.  Plaintiff's motion for summary judgment against Defendant City of
    Gainesville, ECF No. 34, is **DENIED**.

5.  The Clerk must enter judgment in favor of Defendants, stating: "All
    claims against Defendants City of Gainesville and Officer Charles Owens
    are dismissed with prejudice."

6.  The Clerk must close the file.

**SO ORDERED on June 29, 2015.**

**s/Mark E. Walker**  
**United States District Judge**
